All right, Mr. Fields, you have reserved two minutes for rebuttal, so that gives you eight to begin. You may proceed. Thank you, Your Honor. May I please call Darrell Fields of the Federal Defenders on behalf of Appellant Mark Brown. This case concerns special conditions of supervised release. I'd like to start with the special condition providing for the monitoring of Mr. Brown's computer 24 hours a day, essentially. All special conditions have to meet two requirements. One, they have to be reasonably related to the statutory factors governing the selection of sentence. And two, they also must involve no greater deprivation of liberty than is reasonably necessary to meet the statutory goals of sentencing. In this case, Mr. Brown made very, very limited use of a computer with internet access in the commission of this crime. This crime involved his submission of 14 fraudulent tax returns in the names of nine inmates whose identities he had stolen. He submitted this to the IRS, these fraudulent tax returns, and he obtained refunds from the IRS for himself. The only thing he did with the computer is that for some of the tax returns, he delivered them to the IRS through a computer. He filed them using a computer. For the others, he apparently used the post office, like so many other people did. And also in committing this crime, he at times telephoned the IRS to try to facilitate his decision. Well, the district court made a finding that these offenses involved fraud using a computer. What more does he need to say? Well, the evidence doesn't support that. He did use a computer. Doesn't the offense involve the use of a computer? You just said it did. It did, some of it. For some of the 14 counts, he used a computer. But for the others, he didn't use a computer. And his computer use was so limited. I guess that's the point I'm trying to actually really make here. Contrasting the breadth of this condition to the limited role that a computer played in the facilitation of this crime is just not reasonably necessary. This sort of deprivation of liberty isn't reasonably necessary to carry out the goals of sentencing. The other cases the government cites in which the condition this broad is affirmed by this court were Browder and Rebell. And in those cases ‑‑ But, I mean, he engaged in the federal crime while he was on probation for similar offenses in Connecticut, right? Yeah, yes. He was using a computer to facilitate this crime while he was on probation. And yet it was unreasonable to make as a condition of his supervised release that he be monitored on his computer? Yes, Your Honor. We say that because it had so little to do with this crime. If you compare him to Browder and Eward and Rebell where these are Internet crimes, they're sex offenses involving childbirth. Well, that may be. But, I mean, if his computer had been monitored while he was on Connecticut probation, this crime would have perhaps been prevented. Well, Your Honor, we don't know whether he used a computer in the Connecticut. Well, my point is that he did use a computer in this one. He was on supervised release the last time or state probation. Yeah, same thing. And so wasn't the district court justified in concluding that this is a person who might not be a good bet and needs a fair amount of supervision? Well, we argue that it's not reasonably related. And it must also be reasonably necessary. And there's a constitutional gloss to the reasonably necessary standard. Because his condition is so broad, it allows essentially the probation office to search all of his electronic devices 24 hours a day. They install this monitoring software, and they can see everything he does, every communication he has with his daughters. If he wants to have diary entries, they see that. It's not even clear who Mr. Brown is or if that's his name. I mean, it's hard to think of somebody who could do more of what he has done already using a computer. Identity theft and tax fraud and all of those things. So I think why isn't the district court's finding that the computer was used in connection with these crimes enough? The district court didn't find— I mean, what level of specificity would you— The district court didn't find that this—he was arrested under, like, two or three different names since 1994. The district court didn't find that that had anything to do with this crime, with this case. The district court chalked that all up to— So in order to impose this special condition, the district court has to kind of itemize the conduct and then identify which one was involved, the computer, and then what way, if it was a majority of it. I don't understand what you're asking—what you're saying should be required for this condition. Yes, what's required for this condition? Well, look at Browder, Ewart, and Ewert. Their crimes, the Internet, access to the Internet, was critical, was a crux. It was a vat thing without which they couldn't even have done their crime. And they were on view—there were violations of supervised release, police rebel, and Ewert. So access to the Internet actually presented a temptation for them. So in order to impose this condition, you're saying you would have us hold that the district court needs to make a finding, that the offense conduct—the crux of the offense conduct involved a computer, and the computer was a necessary component. That would have to be one aspect, and weigh that against the breadth of this condition. In Browder, the condition was, in order to be made to meet the reasonable necessary standard, there was a third-party monitoring person, a private firm that would do the monitoring. They only informed the probation office if they found that he did some wrongdoing. See, Mr. Brown did very little wrongdoing on computers. It was just the last step of filing, like going to a post office. He used it as—he used the computer the way he would use an envelope if he went to a post office. And he also used the phone. And it's licentious of the district court to say it's licentious. A person who uses a telephone could commit a fraud. You can't—it wouldn't be appropriate to wiretap his telephone as a condition of— Okay. So this—I mean, this is plain error review, right? Yes, Your Honor. So the lawyer below did not—did not object. That's correct, Your Honor. So that was—in your view, that was ineffective assistance of counsel to not object to these conditions? I haven't considered that, Your Honor. Well, it just seems that there's a huge disconnect between the lawyers in the courtroom who are not objecting to what seems like a pretty reasonable condition and then the lawyers on appeal banging the table and saying that this is outrageous. And it does seem to me you have to at least be prepared to answer that question because you're throwing people under the bus, it seems to me. I mean, you're throwing the judge under the bus, but you're also throwing the defense lawyer who was there at the time of sentencing under the bus. Are you not? I don't think— It just makes this all sort of feel like a game. No, no, no, it's not. It's not. Your Honor, this court has found plain error— I think you should be going back to your office and saying you need to object to these things, right? Because if it's just that we're just perpetuating this because it makes for a point in an appellate brief, that strikes me as not appropriate. No, no. We have told people they need to object. If people didn't know they need to object, this sentencing happened in 2024. So we get the information. But this court has found plain error on far less defendant-friendly conditions than here. We have found plain error in Morris Sho, in Blau, and in Jimenez. And the plain error stems from the fact that it's not self-evident in the record what the justification is for the condition. Before you finish up, can I ask about the occupational restriction? Yes, Your Honor. And the language there is that the restriction has to pertain to a specified occupation. But your argument seems to be that computer monitoring at work generally would make it harder to get a job. Is that— This court has recognized that the requirement that you have to notify your employer about your conviction is an occupation restriction. You can look at the Gritchka case. This week on Tuesday, the court issued a decision— So wouldn't that mean that this monitoring condition then would always be an occupational restriction? That's your argument? The requirement that you have to—I'm sorry. I think I'm just repeating you. Because it requires the employer to assent to the installation of the software, this is always going to be an occupational restriction. Yes, yes. Because that's what this court recognizes. If the condition requires you to notify your employer about your conviction, that, this court has interpreted as an occupational restriction. As I said, this case, this court issued a summary order on Tuesday, this Tuesday in Thomas Love, to the same effect, that having to notify. And if you're going to ask your employer to put a—if the probation office or you, the defendant, are going to ask your employer to install some device on whatever work computer you use, you probably would necessarily have to explain to them why that would be necessary for you. In which case, the employer would know about your conviction in your criminal record. All right. All right. Thank you. Thank you. Two minutes for rebuttal. Yes. I hear from Mr. Werblow. Thank you, Your Honor. Good morning, and may it please the court. Sean Werblow on behalf of the United States. The appellant engaged in a years-long stolen identity tax fraud scheme using computers and the Internet. He got away with that scheme until law enforcement realized his IP address and his device had been used to commit the scheme. This was his sixth conviction. He committed it while on supervised release for a very similar offense. And against this backdrop— Probation or supervised release? Probation, Your Honor. State probation. I apologize. State of Connecticut. And against this backdrop, on these facts, the district court made a finding, explained its finding, that a monitoring condition of supervised release was appropriate. And the district court explained its reasons, because the offense involved stolen identities, refund fraud, and fraudulent use of computer. That finding was not error at all and certainly not plain error. If he—at no time that he committed these crimes, was he in an office setting? Was he? I'm not aware of whether he was or wasn't, Your Honor. That's not clear from the record. So neither was the court at the time or the probation at the time. They imposed the obligation with regard to monitoring any devices he had at work? That's fair, Your Honor. And his indication was that—his hope was that he'd drive truck again, off-haul trucking or some form of trucking? Yes, Your Honor. I believe it was a tractor. Was there any indication in any of his criminal activity that somehow his—had he previously worked as a trucker? Do you know that? I don't believe he had. I'm not sure, Your Honor. Then what's the purpose—I don't understand the purpose of the monitoring during employment, how it's in any way related. It wasn't—it didn't help facilitate the crime in any way, shape, or form. I can appreciate the electronic devices. I understand that. But what does it have to do with his employment? And, you know, what if the trucking company requires him to have a company phone with him? Is that—the company phone then going to be subject to monitoring because—or the employer is going to be drawn into knowing— complying with the company phone because it's a device and its terms and conditions of appropriation require that to be monitored? Your Honor, it's only Internet-capable devices, so assuming your question— Well, on my phone, I'm very capable of Googling all about you. Yes, Your Honor. If I wanted to know anything about you—I don't mean that in a derogatory sense. I apologize. I didn't mean to be interpreted that way. But, I mean, smartphones connect us to the world, whether that's a good idea or bad is another thing. But so you're—so it would—he'd be required to have his employer know about and participate in monitoring someone else's phone that's owned by someone else? Your Honor, I do believe that it meets the standard here, and I will explain why. And I'd like to address the court to explain why. I don't mean— I mean, I can appreciate—I can appreciate the device. And so I suppose if you say the device includes any possible device that he would use, wherever he is, maybe that's the argument. But I don't understand—and I haven't seen the use of employer devices in many of our cases. Is this something new that it's going to be—that we're going to see regularly? I don't believe it's new, Your Honor. This has been in a number of cases. And I think here it's not just the use of the device. Of course, that is part of it. But this defendant's background involved a lengthy history of fraud, identity theft fraud, multiple convictions. So it's against that whole backdrop. I'll give you that. And a use, frankly, of a computer and a device to commit his crime. Mr. Field, we can debate whether or not he believes that's central. It was absolutely necessary to commit the crime he chose to commit. Okay. All right. Unless there are any other questions, we'll rest on our submission.  Thank you. All right. Thank you, Mr. Oberlo. Mr. Field, two minutes for rebuttal. Thank you, Your Honor. First, in terms of what saturated his employment, from 2016 to his arrest, according to paragraph 77 of the precedence report, he worked at the maintenance, the scientific maintenance department as an aide in Elizabeth Manor in Poughkeepsie, New York. That's from 2016 to his arrest. And Mr. Brown's criminal record, his own frauds took place between 2017 and 2020. His criminal record does go back to 1994. So, and none of those crimes before— That's a long time, Mr. Field. That is a long time. And none of those crimes before 2017, none of them were frauds. Not a single one.  I'm sorry. No, go ahead. I'm sorry. No, no, go ahead. It is a long time. But when he says he has this long history, he's just fraudster, that was just this one period, 2017 to 2020, when he was doing this fraudulent tax return scheme for three years. He did it in Connecticut with the Connecticut state tax, and he did it with the federal taxes. So he's not a fraudster in any respect. And there's no evidence at all that he at work used a computer, that while he was doing his maintenance job, that he used a computer at that job to send any of these tax returns. And they weren't—using a computer wasn't essential for the 14 counts, because he didn't use a computer to deliver the documents to the IRS on most of the counts. The government only says some of the counts. The PSR refers only to one instance where he used a computer. So it wasn't essential, because it was essential, it would have been necessary for him to do in every one of the fraudulent tax returns. What was essential was for him to get somebody, steal somebody's identity, put in the false information, and deliver it to the IRS, whether by mail or by the computer. So I guess I'm trying to understand this. If he could commit the crime without a computer, then there can be no computer restriction. That's the rule that you would— No, the argument is this is such a very limited, small part of his crime. In relation to the breadth of this condition— I mean, it's hard to agree with that characterization, given the record here. It's such a small part of his crime. I mean, he filed, I mean, a large number of returns for hundreds of thousands of dollars. That's true. That involved lots of victims, and it was all—virtually all done on computers, right? No, no, no. While he was on probation. Only some. Well— Only some of them. Well, that's how he was caught, right? Oh, yeah. That's how he was caught. Only some of them. If most of them were done by dropping in the mail, Your Honor, I guess this is my view. If I did a fraud on the IRS and used the mails, would it be reasonable to search my mail just because I just used it just as a delivery system? I mean, I did send something to the IRS about two weeks ago, and I used the U.S. mails. I didn't use a computer. If I had committed a fraud, would it be reasonable—would it be reasonable to search all my mail because I used the post office? It wouldn't. If a wire processor uses a phone, that wouldn't be reasonable as a condition of supervision to tap that person's phone anymore. All right. Well, thank you, Mr. Fields. Mr. Weberloff, we will reserve decision.